STATE OF NORTH CAROLINA v. FREDDIE LEWIS CANNON

No. 442A94

(Filed 28 July 1995)

### 1. Homicide § 382 (NCI4th)— argument initiated by murder victim—argument quit by victim—defendant as aggressor—jury question

The trial court properly allowed the jury to determine whether defendant was the aggressor where the evidence tended to show that the victim initially went to defendant's home and began to argue with him, but immediately before she was shot she had straightened her car up to go out of the driveway and was about to leave; furthermore, the evidence also reflected that the victim was shot from the side and from behind, further supporting the inference that defendant shot at the victim only after the victim had quit the argument and was trying to leave.

**Am Jur 2d, Homicide § 448.**

### 2. Criminal Law § 497 (NCI4th)— State's exhibits taken to jury room over defendant's objection—error not prejudicial

Though the trial court erred in permitting the jury, over defendant's objection, to take State's exhibits into the jury room, including photographs from the crime scene and autopsy, a copy of defendant's confession, a witness's statement to police, and a diagram of the crime scene, defendant was not prejudiced where he failed to show that there was a reasonable possibility that, had the exhibits not been allowed in the jury room, the outcome of the trial would have been different. N.C.G.S. § 15A-1233(b)

**Am Jur 2d, Trial §§ 1668, 1669, 1672, 1678, 1680.**

**Permitting documents or tape recordings containing confessions of guilt or incriminating admissions to be taken into jury room in criminal case. 37 ALR3d 238.**

### 3. Criminal Law § 497 (NCI4th)— evidence allegedly favorable to defendant—denial of jury's request to review—defendant not prejudiced

The trial court did not abuse its discretion when it denied the jury's request to review the trial testimony of two witnesses which was favorable to defendant while allowing review of testi-

STATE v. CANNON

[341 N.C. 79 (1995)]

mony favorable to the State, since the evidence and exhibits reviewed by the jury were not inconsistent with the testimony not reviewed by the jury; nothing in the record supported defendant's contention that the trial court's decision not to allow this testimony to be reconsidered by the jury was so arbitrary that it could not have been the result of a reasoned decision; and even if the trial court did abuse its discretion, defendant failed to show how he was prejudiced by this decision.

**Am Jur 2d, Trial §§ 1685, 1687, 1688.**

**4. Criminal Law § 747 (NCI4th)— trial court's instruction on confession—no improper expression of opinion**

The evidence was sufficient to support the trial court's instruction that there was evidence tending to show that defendant confessed that he committed the crime charged where defendant stated in his confession that he pulled a gun out of his pocket, cocked it, intended to scare the victim by shooting between her and the windshield, and shot at the car three times; furthermore, the trial court did not impermissibly express an opinion in characterizing defendant's statement as a confession.

**Am Jur 2d, Trial §§ 1197, 1204-1207.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgment imposing a sentence of life imprisonment entered by Ferrell, J., at the 11 April 1994 Criminal Session of Superior Court, Mecklenburg County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 8 May 1995.

*Michael F. Easley, Attorney General, by Michael S. Fox, Associate Attorney General, for the State.*

*Isabel Scott Day, Public Defender, by Julie Ramseur Lewis, for defendant-appellant.*

PARKER, Justice.

Indicted for the first-degree murder of Virginia Nile Craine (victim) in violation of N.C.G.S. § 14-17, defendant was tried noncapitally and found guilty as charged on the theories of premeditation and deliberation and felony murder. The trial court sentenced defendant to life imprisonment.

## STATE v. CANNON

[341 N.C. 79 (1995)]

Defendant and the victim were married on 2 November 1991. The couple began having problems in January 1993. Sometime in July 1993, defendant moved in with his friend James Buchanan. On 29 August 1993, between 6:00 and 7:00 p.m., the victim went to Buchanan's home and pulled her car into Buchanan's driveway. The victim got out of her car and began screaming at defendant about taking a refrigerator from a mobile home in which the two had lived. Buchanan, who had been sleeping in the house, was awakened by the noise and heard the victim yell at defendant to come outside. Defendant, who had been sitting in the living room, went outside. Defendant had a gun in his back pocket. The victim continued to yell at defendant, and the argument escalated. Buchanan heard the victim say she was going to kill defendant, and he heard defendant ask her to leave. The victim slapped defendant on the head two times, and defendant then pushed the victim towards her car and forced her into her car.

After being forced into her car by defendant, the victim backed up her car and deliberately ran it into defendant's car, which was also parked in the driveway. The victim then straightened her car up to start going down the driveway. When the victim's car was directed down the driveway, defendant was standing about eight feet away, on the passenger side of the victim's car. Both windows in the victim's car were rolled down. Defendant pulled his gun out of his pocket, cocked it, pointed it at the victim, and shot into the car three times. The victim was struck by three bullets, and her car rolled partway down the driveway.

On 29 August 1993 Clifton Scott was living with his mother-in-law, who was a neighbor of Buchanan's. Scott observed the original argument between defendant and the victim. Scott stopped watching the two when the victim was forced into her car by defendant. Scott returned to the window when he heard a loud crash and a gunshot. Scott then saw defendant shoot the victim two times. Scott testified that while defendant was shooting at the victim, defendant was standing at the passenger side of the car, about four or five feet away from the car, and the car was moving down the driveway.

After the shooting defendant jumped into his own car and pulled out of the driveway, pushing the victim's car out of the way with his car as he left. Defendant then drove to Tennessee, where he was arrested two days later. Defendant gave a statement to police in which he said that after the victim had "straightened her car up to go

out the driveway," he shot into the victim's car three times. Defendant stated that he intended to shoot between the victim and the windshield to scare the victim.

. An autopsy revealed that the victim had suffered from three gunshot wounds. One bullet entered the back of the victim's right arm and traveled sideways through the arm and then into the victim's body. A second bullet entered the "right back chest area" and exited the left side of the chest. A third bullet entered the back of the right shoulder and exited the front of the right shoulder. The victim died from the gunshot wounds to the chest.

Additional facts will be addressed as necessary to the discussion of a particular issue.

[1] Defendant begins by arguing that the trial court, over objection, erred by instructing the jury that self-defense was unavailable to defendant if defendant was the aggressor. Defendant contends no evidence in the record supports a finding that defendant was the aggressor. We disagree.

A defendant may be deemed an aggressor if he " 'has wrongfully assaulted another or committed a battery upon him.' " *State v. Potter*, 295 N.C. 126, 144 n.2, 244 S.E.2d 397, 409 n.2 (1978) (quoting *State v. Crisp*, 170 N.C. 785, 790, 87 S.E. 511, 514 (1916)). In *State v. Watson*, 338 N.C. 168, 449 S.E.2d 694 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 569 (1995), the victim initially approached the defendant and began arguing with the defendant over a woman. The victim eventually stopped arguing with the defendant and returned to his vehicle. After the victim got into his car, the defendant approached the victim and shot him. Holding that the trial court did not err in declining to instruct that defendant had no duty to retreat, this Court stated: "Defendant, not the victim, was the aggressor. The evidence is that after the victim quit the argument and returned to his vehicle, defendant left his vehicle, walked over to the victim's car and began shooting." *Id.* at 186, 449 S.E.2d at 705; *see also State v. Freeman*, 275 N.C. 662, 669, 170 S.E.2d 461, 466 (1969) (holding that while the victim began altercation, "defendant had become *and remained* the aggressor" when he pursued the fleeing victim); *State v. Church*, 229 N.C. 718, 722, 51 S.E.2d 345, 348 (1949) (holding that while the victim started the fight, the defendant pursued it; thus, the defendant was the aggressor and not entitled to a self-defense instruction).

Just as in *Watson*, the evidence in this case permits the inference that defendant was the aggressor at the time he shot the victim; thus,

an instruction to this effect is not erroneous. While the evidence shows that the victim initially went to defendant's home and began to argue with him, the evidence also shows that immediately before the victim was shot, she had "straightened her car up to go out the driveway," and she was about to leave. The evidence also reflects that the victim was shot from the side and from behind, further supporting the inference that defendant shot at the victim only after the victim had quit the argument and was trying to leave. On the evidence before it, the trial court properly allowed the triers of fact to determine that defendant was the aggressor. *See State v. Terry*, 329 N.C. 191, 199, 404 S.E.2d 658, 663-64 (1991). Defendant's assignment of error on this issue is overruled.

[2] In defendant's second and third issues, he argues that the trial court erred in permitting the jury, over defendant's objection, to take State's exhibits 1-10, 12, 13, 15, and 16 into the jury room, in violation of N.C.G.S. § 15A-1233(b). These exhibits included photographs from the scene of the crime and the autopsy, a copy of defendant's confession, witness Buchanan's first statement to the police, and a diagram of the crime scene.

N.C.G.S. § 15A-1233(b) provides:

Upon request by the jury and with consent of all parties, the judge may in his discretion permit the jury to take to the jury room exhibits and writings which have been received in evidence. If the judge permits the jury to take to the jury room requested exhibits and writings, he may have the jury take additional material or first review other evidence relating to the same issue so as not to give undue prominence to the exhibits, or writings taken to the jury room. If the judge permits an exhibit to be taken to the jury room, he must, upon request, instruct the jury not to conduct any experiments with the exhibit.

N.C.G.S. § 15A-1233(b) (1988). We hold that the trial court erred in allowing the jury to take these exhibits to the jury room without the consent of all parties. *See State v. Huffstetler*, 312 N.C. 92, 114, 322 S.E.2d 110, 124 (1984), *cert. denied*, 471 U.S. 1009, 85 L. Ed. 2d 169 (1985). We must now consider whether this error was prejudicial to defendant.

A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been

committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant.

N.C.G.S. § 15A-1443(a) (1988).

To begin, defendant argues that the court erred by allowing the jury to review the first written statement of witness Buchanan. The statement had been admitted but not read into evidence. Further, the first written statement was not as detailed as witness Buchanan's second statement to the police and his testimony at trial, which the jury was not allowed to review during deliberation. While the statement did not include details discussed by Buchanan during his testimony at trial, it did state that defendant and the victim were arguing, that the victim was cursing at defendant, and that defendant repeatedly asked the victim to leave. At trial both eyewitnesses testified that the victim had initiated the original confrontation, yelled at defendant, and hit him. The statement reviewed by the jury does not contradict the trial testimony on these critical points. Nothing in the statement suggests that the victim did not hit defendant or that the victim did not initiate the confrontation by arguing with and cursing at defendant.

Defendant also argues that submission of this first statement was prejudicial since the trial court denied the jury's request to review Buchanan's second, more detailed statement. In this second statement Buchanan stated, as he did at trial, that the victim threatened to kill defendant and that she hit defendant. However, this second statement had not been admitted into evidence. The trial court has no authority to permit the jury to examine or take into a jury room exhibits which have not been introduced into evidence. *See State v. Bacon*, 326 N.C. 404, 417, 390 S.E.2d 327, 334 (1990). Defendant cannot argue he was prejudiced by the trial court's failure to submit a statement that the court had no authority to allow the jury to review.

Defendant also argues that the submission of eleven photographs to the jury for review was prejudicial. Eight of the photographs were of the deceased either at the scene of the crime or at the autopsy. Some of these photographs showed the victim's wounds, and one photograph showed the victim's face at the autopsy with her eyes and mouth open. Defendant argues that allowing the jury to take these photographs into the jury room permitted the jury to concentrate on the inflammatory aspects of the photographs and was prejudicial.

The photographs in question had been previously admitted and shown to the jury to illustrate the testimony of witnesses. Under N.C.G.S. § 15A-1233(a), the trial court had the discretion to permit the jury to reexamine the pictures closely and at length in the courtroom. On the record before us, we are not persuaded that defendant has shown a reasonable possibility that had the jury not been allowed to review these photographs in the jury room, a different result would have been reached. *See Huffstetler*, 312 N.C. at 115, 322 S.E.2d at 124 (holding not prejudicial error to allow photographs to go into the jury room over defendant's objection, in part because it was within court's discretion to permit the jury to reexamine the pictures at length in the courtroom).

Defendant also argues he was prejudiced when the jury was allowed to review a diagram which had never actually been admitted into evidence. The Court agrees that it was error to submit this diagram to the jury for review for two reasons: (i) defendant did not consent to the admission, N.C.G.S. § 15A-1233(b), and (ii) the trial court did not have authority to allow the jury to review exhibits that have not been admitted into evidence, *Bacon*, 326 N.C. at 417, 390 S.E.2d at 334. However, we conclude this error was not prejudicial to defendant.

The diagram, which was used by three of the State's witnesses, illustrated where defendant's car, the victim's car, and two other cars were parked when the argument between defendant and the victim began. The diagram also showed the location of defendant's home in relation to witness Scott's home and the location of the driveway at defendant's home. Witness Scott used the diagram to explain what occurred during the incident at issue. Defendant used the diagram to reiterate where the victim and defendant were when they began fighting and to establish that only one car could get down the driveway at a time. The record reflects that the diagram itself, as submitted to the jury, did not actually depict where defendant was standing when he shot at the victim's car or where the victim's car was located when defendant shot the victim. The diagram simply illustrated the scene as it was during the initial confrontation. Defendant has not shown a reasonable possibility that based on the information contained in the diagram as submitted, the jury would have reached a different verdict if the diagram had not been submitted for review.

Finally, defendant argues he was also prejudiced by the submission of his confession, the most damaging evidence the State adduced

against defendant. Defendant contends that denying the jury the opportunity to review the favorable trial testimony given by witnesses Scott and Buchanan permitted the jury to concentrate on defendant's statement, which was devoid of details favorable to defendant.

In *State v. Bell*, 48 N.C. App. 356, 363-64, 269 S.E.2d 201, 205, *disc. rev. denied and appeal dismissed*, 301 N.C. 528, 273 S.E.2d 455 (1980), the defendant argued that the trial court committed prejudicial error when it allowed the jury, over the defendant's objection, to review three written statements that presented the evidence in the light most favorable to the State, while not allowing trial testimony which was more favorable to the defendant to be taken into the jury room. The defendant in *Bell* argued that the reason the statements that were taken to the jury room were prejudicial was that they did not fully show that the victim was the aggressor. *Id.* at 364, 269 S.E.2d at 205. The court noted that there was some evidence that the victim was the aggressor in the statements taken into the jury room. *Id.* The court also noted that the evidence against the defendant presented at trial and in the written statements at issue was substantial. *Id.* The court concluded that the defendant failed to meet his burden of showing a reasonable possibility that had the alleged error not occurred, the outcome of the trial would have been different. *Id.*

In this case, as in *Bell*, the jury was given written statements to review that defendant argues were not as favorable to defendant as certain testimony from trial that was not given to the jury to review. In the present case the evidence against defendant was substantial. Defendant's statement had been read in its entirety to the jury by a State's witness. Accordingly, we conclude defendant has not shown that there is a reasonable possibility that if defendant's confession had not been given to the jury, the outcome of the trial would have been different.

In conclusion we have determined that while the trial court erred in submitting exhibits to the jury for review over defendant's objection, defendant has failed to show that he was prejudiced by this error.

[3] In a related issue defendant argues that the trial court abused its discretion when it denied the jury's request to review the trial testimony of State's witnesses Scott and Buchanan in violation of N.C.G.S. § 15A-1233. Defendant contends the testimony not submitted to the jury for review was favorable to defendant, while the evidence and

exhibits that were submitted to the jury for its review were favorable to the State. Defendant argues the trial testimony of Scott and Buchanan tended to show that the victim was the aggressor and that defendant acted in self-defense. Specifically, defendant notes that Buchanan stated that at some point, defendant had to jump out of the way of the victim's car.

N.C.G.S. § 15A-1233(a) provides:

If the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom. The judge in his discretion, after notice to the prosecutor and defendant, may direct that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open court the requested materials admitted into evidence. In his discretion the judge may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

The judge in this case stated that the testimony of Scott and Buchanan was "not available in writing for you to observe, and the Court in it's [sic] discretion will not require it."

"When the trial court states for the record that, in its discretion, it is allowing or denying a jury's request to review testimony, it is presumed that the trial court did so in accordance with N.C.G.S. § 15A-1233." *State v. Weddington*, 329 N.C. 202, 208, 404 S.E.2d 671, 675 (1991). Defendant does not argue that the trial court did not act in its discretion, but instead argues that the trial court abused this discretion and, in doing so, prejudiced defendant. We disagree.

To show that the trial court abused its discretion, "defendant must demonstrate that the trial court's action was 'so arbitrary that it could not have been the result of a reasoned decision.' " *Id.* at 209, 404 S.E.2d at 676 (quoting *State v. Wilson*, 313 N.C. 516, 538, 330 S.E.2d 450, 465 (1985)). While Scott and Buchanan testified that the victim initiated the confrontation, their testimony also suggested that the car was moving away from defendant and down the driveway when defendant shot the victim. Buchanan did mention at trial that at some point, defendant had to jump out of the way of the victim's car, but Buchanan's testimony was conflicting and contradictory as to when and if defendant may have had to jump out of the way of the victim's car. During direct examination, Buchanan failed to mention that defendant ever had to jump out of the way of the car; during cross-

examination, Buchanan stated that defendant had to move out of the way of the car when the victim hit defendant's car; during redirect examination, Buchanan testified that defendant had to jump out of the way the "second time," not the first time, the victim moved her car. Buchanan never testified that defendant shot at the victim to avoid being hit by the car, or even that defendant shot at the victim's car as it was being driven in defendant's direction. In fact, Buchanan testified on direct examination that the car was pointed down the driveway and rolling forward, as if to leave, when defendant shot at the victim three times. Buchanan never changed or contradicted this part of his testimony. A review of the testimony reveals that the testimony taken as a whole supports the State's version of the events at issue. The evidence and exhibits reviewed by the jury were not inconsistent with the testimony not reviewed by the jury; the reviewed statements were simply not as detailed as the trial testimony.

Nothing in the record supports defendant's contention that the trial court's decision not to allow this testimony to be reconsidered by the jury was so arbitrary that it could not have been the result of a reasoned decision. The trial court did not abuse its discretion by refusing to allow the jury to review the requested trial testimony.

Moreover, assuming *arguendo* that the trial court did abuse its discretion in not allowing the jury to review this testimony, defendant has not shown how he was prejudiced by this decision. Defendant has not shown that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial." N.C.G.S. § 15A-1443(a). The statements in Buchanan's trial testimony that could be deemed the most helpful were Buchanan's statements that defendant jumped out of the way of the victim's car at some point in time. Buchanan's testimony pertaining to when defendant had to move out of the way of the car was contradictory and confusing, and Buchanan never actually stated that defendant shot the victim to avoid being hit. The testimony defendant argues should have also been reviewed by the jury supported the State's theory of the case and specifically indicated that defendant shot at the victim when her car was going down the driveway, away from defendant. We conclude that defendant has not shown there was a reasonable possibility that the jury would have reached a different verdict had the testimony been submitted. Defendant's assignment of error is overruled.

[4] Finally, defendant argues that the record is devoid of evidence to support the trial court's instruction that there was evidence tending

to show that defendant confessed that he committed the crime charged. Defendant also argues that the instruction was an impermissible expression of opinion on the part of the trial court. We disagree.

"A trial judge should never give instructions to a jury which are not based upon a state of facts presented by some reasonable view of the evidence." *State v. Lampkins*, 283 N.C. 520, 523, 196 S.E.2d 697, 699 (1973). In this case the trial judge instructed the jury:

> There is evidence which tends to show that the Defendant confessed that he committed the crime charged in this case.

> If you find that the Defendant made that confession, then you should consider all of the circumstances under . . . which it was made, in determining whether it was a truthful confession, and the weight you will give to it.

Defendant was charged with first-degree murder. One of the theories upon which he was tried was felony murder with the underlying felony being discharging a firearm into an occupied motor vehicle.

Confession is defined as a "[v]oluntary statement made by one who is [a] defendant in [a] criminal trial at [a] time when he is not testifying in trial and by which he acknowledges certain conduct of his own constituting [a] crime for which he is on trial; a statement which, if true, discloses his guilt of that crime." *Black's Law Dictionary* 296 (6th ed. 1990).

N.C.G.S. § 14-17 defines "first-degree murder" in pertinent part as a

> murder which shall be perpetrated by . . . willful, deliberate, and premeditated killing, or which shall be committed in the perpetration or attempted perpetration of any . . . felony committed or attempted with the use of a deadly weapon.

N.C.G.S. § 14-34.1 provides that "[a]ny person who willfully or wantonly discharges or attempts to discharge[] . . . [a] firearm into any . . . vehicle . . . while it is occupied is guilty of a . . . felony." In his confession defendant stated in part: "I pulled the gun out of my pocket and cocked it. I was going to shoot into the car, between her and the windshield, just to scare her. I pointed my gun toward the car and shot 3 times."

A reasonable reading of this statement is that defendant willfully and with knowledge that the vehicle was occupied discharged his gun three times into an occupied vehicle. The evidence is uncontradicted that the victim died from gunshot wounds sustained when defendant shot into the vehicle. Thus, the murder was committed in perpetration of a felony committed with the use of a deadly weapon. Defendant admitted that he had engaged in certain conduct which constituted the crime of felony murder. His statement amounts to a "confession" to first-degree murder. *See State v. Hamilton*, 298 N.C. 238, 245, 258 S.E.2d 350, 354 (1979) (holding that defendant's statement amounted to a confession when he acknowledged that he had committed certain acts which constituted the crimes of rape and burglary). We conclude the trial court's instruction was "based upon a state of facts presented by some reasonable view of the evidence" and was not erroneous.

Defendant also argues that the trial court in this case impermissibly expressed an opinion in characterizing defendant's statement as a confession in violation of N.C.G.S. §§ 15A-1222 and -1232. Pursuant to N.C.G.S. §§ 15A-1222 and -1232, a judge may not express an opinion on a question of fact to be decided by the jury and specifically may not express an opinion as to whether a fact has been proven when instructing the jury. We conclude that the trial court's confession instruction was not an expression of opinion.

In *State v. Young*, 324 N.C. 489, 380 S.E.2d 94 (1989), the defendant argued that the trial court's instructions that evidence tended to show that defendant confessed to the crime charged amounted to an impermissible expression of opinion in violation of N.C.G.S. §§ 15A-1222 and -1232. The Court held:

The use of the words "tending to show" or "tends to show" in reviewing the evidence does not constitute an expression of the trial court's opinion on the evidence. Nor did the trial court's statement that the evidence tended to show that the defendant had "confessed" that he "committed the crime charged" amount to an expression of opinion by the trial court, *because* evidence had been introduced which in fact tended to show that the defendant had confessed and to the *crime charged*, first[-]degree murder.

*Young*, 324 N.C. at 495, 380 S.E.2d at 97-98 (citations omitted).

In *Young* the Court determined that the trial court's instructions did not amount to an expression of opinion that the defendant had in fact confessed. The trial court's instructions also contained the instruction that "*if you find* that the defendant made that confession, *then* you should consider all the circumstances under which it was made in determining whether it was a truthful confession and the weight which you will give it." *Id.* at 498, 380 S.E.2d at 99. This Court held that "[t]his instruction made it clear that, although there was evidence tending to show that the defendant had confessed, the trial court left it entirely for the jury to determine whether the evidence showed that the defendant in fact had confessed." *Id.* In this case the trial court included the same instruction as in *Young*, leaving it to the jury to determine whether the evidence showed that the defendant had in fact confessed.

Under *Young* defendant's argument that the trial court erred by instructing that the evidence tended to show that defendant confessed to the crime charged is without merit.

Having reviewed all defendant's assignments of error, we conclude that defendant received a fair trial free from prejudicial error.

NO ERROR.